UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERICAN ECONOMY INSURANCE COMPANY, a foreign corporation; and TOTEM BOWL AND INVESTMENT, INC. a Washington corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY, a foreign corporation,<br><br>Defendant. | CASE NO. C11-1070 MJP<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on the parties' cross-motions for summary judgment. (Dkt. Nos. 11 and 13.) Having reviewed the motions, the responses (Dkt. Nos. 15 and 17), the replies (Dkt. Nos. 16 and 18), and all related filings, the Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiffs' motion for summary judgment.

**Background**

A woman fell on the way to her hair appointment with Design Concept, Inc. ("Design Concept"), which operated a salon located in a Kirkland, WA strip mall. The woman fell on a

staircase leading from the upper-level parking area to the sidewalk in front of the strip mall. Totem Bowl and Investment Inc. ("Totem Bowl") operated the strip mall. This is a dispute over which insurance company—Totem Bowl's insurance company (American Economy Insurance Company) or Design Concept's insurance company (Zurich Insurance Company) is liable for the woman's fall.

In December 2005, Bonnie Goodrum and Design Concept entered into a lease agreement ("Lease") with Plaintiff Totem Bowl to operate a hair salon in Totem Bowl's commercial strip mall. Under the Lease, Design Concept was "responsible for any maintenance or improvement of leased space, such as painting, flooring, partition changes, etc." and Totem Bowl was "responsible for general outside repair and maintenance . . . [and] exterior and structural maintenance." (Edmonds Decl. ¶ 2, Ex. 1.) The Lease's liability provision required that (1) Design Concept "maintain general liability insurance for claims for bodily injury or death and property damage" and (2) Totem Bowl be "designated as an additional listed insured on [Design Concept's] general liability insurance policy." (Edmonds Decl. ¶ 2, Ex. 1.)

In accordance with the Lease, Design Concept purchased a general liability insurance policy from Defendant Zurich Insurance Company ("the Zurich Policy") and Totem Bowl was added as the additional insured via an endorsement. (Jensen Decl., Ex. 2.) Totem Bowl maintained its own separate general commercial liability policy through American Economy Insurance Company ("the American Economy Policy"). (Edmonds Decl., Ex. 15.)

In December 2006, a patron, Christine Henkelman ("Henkelman"), was injured on her way to her hair appointment at Design Concept. (Edmonds Decl., Ex. 2 (Henkelman Compl.)). Henkelman slipped on ice located at an outdoor stairway providing access from an upper level general parking area to the sidewalk in front of the strip mall where the hair salon was located.

1  (Id.)  When Henkelman presented a claim to Totem Bowl's general liability carrier, American

2  Economy tendered the claim to Zurich.  Zurich initially accepted tender in January 2008.

3  (Edmonds Decl., Ex. 5.)  In October 2008, however, the claim was reassigned to a different

4  adjuster and Zurich rescinded tender. (Edmonds Decl., Ex. 6.)

5      A year later, in November 2009, Henkelman submitted a formal settlement demand and

6  filed suit against both Design Concept and Totem Bowl in King County Superior Court ("the

7  Underlying Action").  (Edmonds Decl., Exs. 7 and 2; Henkelman v. Design Concept Inc., et. al.,

8  C09-2-42885-9 SEA.)  After the Underlying Action was filed, American Economy tendered

9  defense and indemnification of the suit to Zurich in December 2009 and again in February 2010.

10 Zurich declined American Economy's tenders in March 2010.  (Edmonds Decl., Ex. 11.)

11 American Economy likewise declined Zurich's cross-tendered defense and indemnification.

12 (Edmonds Decl., Ex. 10.)

13     In April 2011, the King County Superior Court granted summary judgment in favor of

14 Zurich's insured, Design Concept, from the Underlying Action.  (Edmonds Decl., Ex. 12.)

15 American Economy continued to defend its insured, Totem Bowl, eventually settling with

16 Henkelman for $50,000.  (Edmonds Decl., Ex. 13.)  American Economy asserts Totem Bowl's

17 defense cost $22,600 in attorneys' fees.  (Edmonds Decl., Ex. 14.)

18     Plaintiffs American Economy and Totem Bowl filed this action against Zurich for failing

19 to defend the Underlying Action under a reservation of rights.  The parties now file cross-

20 motions for summary judgment.  Plaintiffs argue Zurich breached its duty to defend Totem Bowl

21 in bad faith and is therefore liable for the cost in defending the Underlying Action.  Defendants

22 argues its denial of tender and indemnification was reasonable given that Henkelman's fall

23 occurred on property not leased to its insured.  Alternatively, Zurich argues that even if it were

24

determined Henkelman's injury was covered under its policy, the express terms of the Zurich Policy limits its coverage to half of the costs in the Underlying Action.

**Analysis**

I.  Cross Motions for Summary Judgment

   A.  Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."); Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

   B.  Bad Faith

The focus of the parties' dispute on summary judgment is bad faith. In Washington, an insurer has a duty to act in good faith. RCW 48.01.030. When the insurer breaches its duty to defend in bad faith, the insurer may be held liable not only in contract for the cost of the defense, but also be barred from asserting the claim was outside the scope of the contract. Kirk v. Mt.

Airy Ins. Co., 134 Wash.2d 558, 564 (1998). In other words, if Zurich acted in bad faith when denying tender, then Zurich is precluded from raising coverage defenses and Zurich is required to reimburse Plaintiffs for cost of defending the Underlying Action.

In order to establish bad faith, however, an insured must show the breach was unreasonable, frivolous, or unfounded. Wolf v. League Gen. Ins. Co., 85 Wash.App. 113, 122 (1997). Bad faith will not be found where a denial of coverage or a failure to provide a defense is based upon a reasonable interpretation of the insurance policy. Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys., 111 Wash.2d 452, 470 (1988).

Here, Zurich's coverage defenses bar Plaintiffs' claims because there is no showing that Zurich's decision not to defend Plaintiffs was in bad faith. First, the Zurich Policy covered bodily injuries arising from Design Concept's leased space only and Henkelman fell in an area of the strip mall wholly separate from Design Concept's leased space. Second, the Lease's plain language placed the obligation for maintaining the outdoor stairway on Totem Bowl and not Zurich's insured, Design Concept.

1. The Zurich Policy

Zurich's denial of tender was not in bad faith based on the express terms of the insurance policy.

Under the Zurich Policy, Totem Bowl's coverage was subject to limitations. Totem Bowl was "insured" under Section II.2.f., which defined "insured" as "[a]ny person or organization to whom [Design Concept was] obligated by virtue of a written 'insured contract' to provide insurance…, but only with respect to liability arising out of the ownership, maintenance, or use of that part of any premises leased to [Design Concept]." (Jensen Decl., Ex. 2 (Commercial General Liability Coverage Form at 9 of 17). In other words, Totem Bowl was an

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT- 5

insured by operation of the Lease, the written insured contract that required Design Concept to add Totem Bowl as an insured; the Zurich Policy did not cover injuries arising separate from or adjacent to the hair salon. Since Henkelman's injury did not arise out of the ownership, maintenance or use of any premise leased to Design Concept, the Court finds Zurich's decision not to defend was a reasonable interpretation of the insurance policy. See <u>Hilton Hotels Corp. v. Employers Ins. of Wausau</u>, 629 So.2d 1064 (Fla. App. 1994)(finding denial of coverage proper where the hotel-landlord attempted to seek indemnification from a store-tenant's insurer for damages sustained by the store-tenant's employee outside the store and in the hotel lobby).

      Plaintiffs' arguments interpreting the Zurich Policy to the contrary are unavailing. First, Plaintiffs argue Totem Bowl was an insured under a broader definition of "insured" which did not limit coverage to those "arising out of" Design Concept's Lease. Under the Zurich Policy, several entities could qualify as "insured." Plaintiffs argue Totem Bowl was not an insured under Section II.2.f., but an "insured" under Section II 1.d, which defined "insured" as "designated in the Declarations as . . . an organization other than a partnership, joint venture, or limited liability company." (Jensen Decl., Ex. 2, Section II.1.d.) The Court disagrees. Totem Bowl could not have been an insured under Section 1.d. because Totem Bowl was not "designated in the Declarations." The Declarations reference the "<u>tenants</u>' legal liability" and "liability for beauticians and barbers." (Jensen Decl., Dkt. No. 12-1 at 67-68, 70.) Nothing in the Declarations suggests Totem Bowl, the strip mall's general manager, was also designated as an insured. Since Plaintiffs' interpretation of the Zurich Policy ignores the "designated in the Declarations" requirement and, in effect, requires Zurich to cover any organization that are not partnerships, joint ventures, or limited liability companies, the Court finds Plaintiffs argument unpersuasive.

1   Second, Plaintiffs argue the Zurich Policy's endorsement added Totem Bowl without

2 limitations. Again, the Court disagrees. An endorsement is a written document attached to an

3 insurance policy that modifies the policy. To avoid full coverage for an additional insured, the

4 insurer must draft and incorporate an express coverage limitation in the policy and endorsement

5 language. <u>Hartford Ins. Co. v. Ohio Cas. Ins. Co.</u>, 145 Wn. App. 765, 778 (2008). While an

6 additional insured endorsement is construed as written, <u>Equilon Enterprises, LLC v. Great Am.</u>

7 <u>Alliance Ins. Co.</u>, 132. Wn. App. 430, 436-7 (1980), endorsements are read with the policy to

8 determine the intent of the parties. <u>Transcontinental Ins. Co. v. Wash. Public Utilities Districts'</u>

9 <u>Utility System</u>, 111 Wash.2d 452, 462 (1988). An endorsement will not abrogate or modify any

10 provision of the policy unless it is so stated. <u>Id.</u>

11   Here, the Zurich Policy's express terms limit Totem Bowl's endorsement. The

12 endorsement described the changes as follows:

13   ADDED MANAGERS OF LESSORS OF PREMISES

14   ADDED LOC 1 MANAGERS OR LESSORS OF PREMISES TOTEM BOWL

15   C/O TECH CITY BOWL

16   13033 NE 70TH PLACE #1 KIRKLAND WA 98033.

17 (Jensen Decl., Ex. 2.) While the endorsement itself did not contain limitations, the policy

18 identified Totem Bowl as an insured by operation of the Lease, as discussed above. Specifically,

19 coverage for Totem Bowl under the policy was limited to that "arising out of the ownership,

20 maintenance, or use of that part of any premises leased to [Design Concept.]" (Jensen Decl., Ex.

21 2 at 9 of 17.) The endorsement does not state an intention to abrogate or modify any provision of

22 the Zurich Policy. In other words, considering the endorsement in light of the express policy

23

24 ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT- 7

provisions, the endorsement incorporated limits already set forth by the Zurich Policy's express terms.

The Court finds the Zurich Policy only covered Totem Bowl to the extent liability arose out of Design Concept's lease. Since the Zurich Policy's coverage for Totem Bowl was limited and Henkelman's injury occurred in an area not leased to Design Concept, the Court GRANTS Defendant's motion for summary judgment

   2.  The Lease

Zurich's denial of tender was also reasonable in light of the plain language of the Lease.

The plain language of the Lease places responsibility for outdoor areas on Totem Bowl. Under the Lease, Totem Bowl was "responsible for general outside repair and maintenance . . . [and] exterior and structural maintenance." (Edmonds Decl. ¶ 2, Ex. 1.) Since Henkelman fell on an outdoor stairway that Totem Bowl (and not Design Concept) was responsible for maintaining under the Lease, Zurich's denial of tender was reasonable and in good faith.

Plaintiffs nevertheless argue Zurich improperly relied on the Lease to deny tender. The Court finds Plaintiffs' argument unavailing. In Washington, an insurer is relieved of the duty to defend if the alleged claim against the insured is clearly not covered by the policy. Truck Ins. Exchange v. Vanport Homes, Inc., 58 P.3d 276 (Wash. 2002). While Plaintiffs argue complaints should be construed liberally and Henkelman's complaint should have been considered on its face, the Court finds Henkelman's complaint did not implicate Zurich even setting aside the Lease. Based on the complaint, Henkelman slipped on ice located on an outdoor stairway from the upper parking lot down to the entrance way to Design Concept's hair salon. While Henkelman sued both Design Concept and Totem Bowl, the allegation was that Henkelman fell on an outdoor stairway not leased to Design Concept. Henkelman's injury was clearly not

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT- 8

covered by the Zurich Policy; therefore, Zurich was not required to defend under a reservation of rights and its denial of tender was not in bad faith.

In addition, the Court finds Zurich's consideration of the Lease was proper. In considering a motion to dismiss, courts often consider documents not physically attached to the complaint if the documents' "authenticity ... is not contested" and "the plaintiff's complaint necessarily relies" on them." Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998)). Here, the Lease's authenticity is not contested and it is undisputed that the Zurich Policy was purchased pursuant to the Lease with Totem Bowl. In addition, the Lease was incorporated into Henkelman's Complaint by reference. The Complaint stated the hair salon "was leased to [Design Concept] as lessee, by [Totem Bowl], as lessor." (Edmonds Decl., Ex. 12 at ¶¶ 1.2-1.3 (Henkelman Complaint)). Zurich's consideration of the Lease to deny tender, therefore, was reasonable and not in bad faith.

Since Zurich's decision not to defend was reasonable and in good faith given the Lease's plain language, the Court GRANTS Zurich's motion for summary judgment regarding bad faith.

C. Olympic Steamship Fees

Plaintiffs also move for summary judgment on their request for attorneys' fees.

In Washington, an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract. Olympic S.S. Co. v. Centennial Ins. Co., 117 Wn.2d 37 (1991). Since there is no showing that Plaintiffs are entitled to coverage under the Zurich Policy for the reasons discussed above, the Court DENIES Plaintiffs' attendant request for attorneys' fees under Olympic Steamship.

\\

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT- 9

**Conclusion**

The Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiffs' motion for summary judgment. The Zurich Policy's coverage over Totem Bowl was limited to the part of the strip mall leased to Design Concept and did not cover injuries sustained at the strip mall in general. Since the client fell on an outside stairway unattached to Design Concept's leased space, Zurich's denial of tender and indemnification was not in bad faith; therefore, Zurich is not liable for the costs of defending the client's claim. The clerk is ordered to provide copies of this order to all counsel.

Dated this 21st day of May, 2012.

Marsha J. Pechman
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT- 10